No. 25-10619

---

**United States Court of Appeals for the Fifth Circuit**

---

**NEIL MCDOUGALL,**
*Appellant*,

v.

**SAUDI ARABIAN OIL GROUP, d/b/a SAUDI ARAMCO,**
*Appellee.*

---

On Appeal from the United States District Court
for the Northern District of Texas, Dallas Division

---

APPELLANT'S ORIGINAL BRIEF

---

Warren V. Norred
**Norred Law, PLLC**
Texas Bar Number: 24045094
warren@norredlaw.com
515 E. Border St.
Arlington, TX 76010
(817) 704-3984 (Office)
(817) 524-6686 (Fax)
*Counsel for Appellant*

# I. CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of 5th Cir. Rule 28.2.1, have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

**Appellant:**
   Neil McDougall

Appellant's Counsel
   Warren Norred (TX Bar No. 24045094), warren@norredlaw.com
   Norred Law, PLLC; 515 E. Border Street; Arlington, Texas 76010
   Tel: (817) 704-3984; Fax: (817) 524-6686

**Appellee:**
   Saudi Arabian Oil Company, d/b/a Saudi Aramco

Appellee's Counsel:
   White & Case
   Christopher L. Dodson (TSB No. 24050519)
   609 Main Street, Suite 2900
   Houston, TX 77002
   T: (713) 496-9700; F: (713) 496-9701
   chris.dodson@whitecase.com

   -and-

   Carolyn B. Lamm (pro hac vice) (clamm@whitecase.com)
   Hansel T. Pham (pro hac vice) (hpham@whitecase.com)
   Nicolle Kownacki (pro hac vice) (nkownacki@whitecase.com)
   701 Thirteenth Street, NW
   Washington, DC 20005
   T: (202) 626 2600; F: (202) 639 9355

*/s/Warren V. Norred*
Warren V. Norred

## II.    STATEMENT REGARDING ORAL ARGUMENT

According to the 5th Cir. R. 28.2.3, the Court would benefit from oral argument in this case because the issues presented in this case concern complex issues involving the right to property in a claim for relief and interactions with jurisdiction over foreign state entities, which is an area of law lacking clarity. Counsel for both parties, if given the opportunity to appear before the Court, will be able to answer any questions the Court may have and expand on any reasoning that requires additional clarification.

# III.   TABLE OF CONTENTS

I.     CERTIFICATE OF INTERESTED PERSONS ........................................ i

II.    STATEMENT REGARDING ORAL ARGUMENT.............................. ii

III.   TABLE OF CONTENTS .................................................................... iii

IV.    TABLE OF AUTHORITIES............................................................. iv

V.     STATEMENT OF JURISDICTION ...................................................1

VI.    ISSUES PRESENTED ........................................................................1

VII.   STATEMENT OF THE CASE ...........................................................1

   A. Factual Background .........................................................................1

   B. Procedural Background ....................................................................5

VIII.  STANDARD OF REVIEW .................................................................8

IX.    SUMMARY OF THE ARGUMENT ..................................................9

X.     ARGUMENT.....................................................................................10

   A. FSIA generally applies sovereign immunity to foreign states and
       entities. ...........................................................................................10

   B. The District Court Erred in reading Minimum Contacts as a
       requirement in the FSIA. ...............................................................11

   C. The District Court erred in holding that the Commercial Activity
       Exception does not apply. ..............................................................14

      1.     Saudi Aramco's actions were commercial in nature..........................15

      2.     Saudi Aramco's fraud arises from U.S.-based activities. ...................16

   D. The District Court erred in rejecting the Expropriation Exception. .....18

      1.     Legal claims are property which are subject to expropriation ............20

      2.     Saudi Aramco unlawfully discriminated against alien workers in its
             expropriation. ...................................................................................21

XI.    CONCLUSION STATING RELIEF SOUGHT ...................................23

# IV.    TABLE OF AUTHORITIES

## Cases

*Banco Nacional de Cuba v. Chem. Bank N.Y. Tr. Co.*,
    822, F.2d 230, 239 (2d Cir. 1987) ...................................................................19

*Beierwaltes v. L'Office Federale de la Culture de la Confederation Suisse
    (Fed. Office of Culture of the Swiss Confederation)*,
    999 F.3d 808, 821 (2d Cir. 2021) ...............................................................19

*Bolivarian Rep. of Venez. v. Helmerich & Payne Int'l Drilling Co.*,
    581 U.S. 170, 181 (2017) ............................................................................18

*Bravo–Fernandez v. U.S.*, 580 U.S. 5, 10 (2016) ............................................22

*Cassirer v. Thyssen-Bornemisza Collection Foundation*,
    596 U.S. 107, 113–14 (2022) .....................................................................21

*CC/Devas (Mauritius) Ltd. v. Antrix Corp. Ltd.*,
    221 L. Ed. 2d 867 (U.S. 2025) ........................................................ 11, 12, 13

*Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003) .....................8

*Crist v. Republic of Turk.*, 995 F. Supp. 5, 11 (D.D.C. 1998) ..............................23

*Henry v. Brooks*, 651 S.W.3d 657, 664 (Tex. App.—Tyler 2022, no pet.) .............21

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ...........................................12

*Janvey v. Libyan Investment Auth.*, 840 F.3d 248, 257 (5th Cir. 2016) .......... 10, 11

*OBB Personenverkehr AG v. Sachs*, 577 U.S. 27 (2015) .................... 12, 15, 16, 17

*Republic of Argentina v. Weltover*, 504 U.S. 607 (1992) ...................................15

*Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) ...........................................10

*Siderman de Blake v. Republic of Argentin*a, 965 F.2d 699, 711 (9th Cir. 1992)...23

*Stena Rederi AB v. Comision de Contratos del Comite Ejecutivo General del
    Sindicato Revolucionario de Trabajadores Petroleros de la Republica Mexicana,
    S.C.*, 923 F.2d 380 (5th Cir. 1991) ............................................................14

*Verlinden B.V. v. Cent. Bank of Nig.*, 461 U.S. 480, 488-89 (1983) ....................19

## Statutes

28 U.S.C. § 1291 .................................................................................................1

28 U.S.C. § 1330(b) ..........................................................................................12

28 U.S.C. § 1605 ....................................................................... 11, 12, 14, 18

28 U.S.C. § 1607 ..............................................................................................12

## Rules

5th Cir. R. 28.2.3 ............................................................................................ ii

5th Cir. R. 32.1 ..................................................................................................24

Fed. R. App. Pro. 32 ..........................................................................................24

Fed. R. App. Pro. 4 .............................................................................................1

# V.    STATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal because the district court entered a final judgment disposing of all parties and claims, permitting parties to immediately appeal under Fed. R. App. Pro. 4 and 28 U.S.C. § 1291.

# VI.    ISSUES PRESENTED

1. Under *CC/Devas v. Antrix*, whether the District Court committed the reversible error of applying *Int'l Shoe* on top of the statutory requirements of the FSIA?

2. Under 28 U.S.C. § 1605, when a Plaintiff sues a foreign state actor in tort for fraud, whether the continuous, systematic contacts with the forum related to the case satisfy the Commercial Activities Exception?

3. Under 28 U.S.C. § 1605, when a Plaintiff sues a foreign state actor in tort for fraud, whether the deprivation of a claim for relief qualifies as deprivation of property which satisfies the Expropriation Exception?

# VII.

# VIII.    STATEMENT OF THE CASE

## A. Factual Background

3.    Aramco is a general term that refers to a series of subsidiary businesses that either directly operate or support Saudi Arabian oil production. The Kingdom of Saudi Arabia either directly or indirectly owns all Aramco businesses.

4.     Saudi Arabian Oil Group ("Saudi Aramco") hired Mr. McDougall through its U.S. arm, Aramco Services Company, in Houston in 2012. ROA.45–50. Mr. McDougall moved to Saudi Arabia to work directly for the Saudi company. ROA.51.

5.     Mr. McDougall worked for Saudi Aramco from November 2012 to June 2020 under one-year expat contracts, each of which renewed automatically at the end of the year term. ROA.309. He relocated his family to the Saudi corporate compound with the intent to work there for at least ten years.

6.     In January 2017, Mr. McDougall's family moved to Canada based on a combination of excellent incentives on a deadline and family reasons. However, Mr. McDougall remained behind in Saudi Arabia to continue working for Saudi Aramco. ROA.309–310.

7.     Mr. McDougall requested leave for a short family visit, and was approved around January 2020. ROA.310. His original return flight was scheduled for March 14, 2020, anticipating that he would be able to re-enter the country. ROA.310. Unfortunately, his trip coincided with the start of COVID-19. ROA.310. Because of cancellations and delays, Mr. McDougall's flight missed the entry window into Saudi Arabia by hours. Employees stuck outside the country had to remain outside unless Saudi Arabia approved them for entry. ROA.310 Saudi Arabia did not approve Mr. McDougall's return to the country while it was shut down. ROA.310

On November 1, 2020, Mr. McDougall's visa sponsorship expired, preventing him from re-entering the country at all. ROA.310.

8.      While Mr. McDougall was stuck outside the country, Saudi Aramco took the opportunity to terminate him in June 2020. ROA.310. Aramco stated to Mr. McDougall that the reason for discharging him was that it identified his services as "no longer needed." ROA.310 Notably, Aramco did not base its discharge on force majeure. ROA.310.

9.      In February 2021, Mr. McDougall won a wrongful termination claim against Aramco for 229,138 Saudi Riyals ($61,179.84). ROA.60–65. This award reflected only his lost salary for the remaining term from July 1, 2020, to October 31, 2020. ROA.60–65.

10.     Saudi Aramco appealed the judgment, but the Saudi appellate Court upheld the award to Mr. McDougall in April 2021. ROA.310. No party appealed the judgment further.

11.     During his suit against Saudi Aramco, Mr. McDougall's Saudi counsel tried to obtain his employment documents, which were his by right under Saudi law. ROA.64 and ROA.310 These documents would have allowed him to recover his employment benefits, including his medical, retirement, and life insurance benefits. ROA.310–311. Saudi law required Saudi Aramco to provide Mr. McDougall with a copy of his employment contract as a matter of course post-termination. ROA.134.

Further, Aramco's lawyers represented to Mr. McDougall's counsel, Yousef Basher, in Saudi Court on or around February 8, 2021, that they would turn over Mr. McDougall's employment documents to him. ROA.64 and ROA.310. Despite his requests, Aramco's legal obligation under Saudi law to turn over his employment documents, and Saudi Aramco counsel's promise, Aramco never turned over Mr. McDougall's employment documents. Instead, it provided the Court with "form" terms, which may or may not have been in Mr. McDougall's employment contract. ROA.52–55. Only Aramco has a copy of Mr. McDougall's actual employment documents.

12. Mr. McDougall's employment records contain important information regarding his claim for his Family Medical Benefit, retirement benefit SRIP, and additional benefits (i.e., life insurance benefits), which remain with Aramco.

13. As in some parts of the U.S. justice system, the Saudi justice system provides that plaintiffs can make certain claims only in specific courts. Further, there is a right to appeal a final judgment. Claims for certain benefits have to be made separately in different courts in Saudi Arabia. Because Aramco has not turned over his documents, Mr. McDougall could not recover his lost benefits directly. He could not plead some of the claims in the rendering Court and could not appeal the denial of other claims without his employment documents as support. These claims were worth

approximately $250,000, more than four times the Saudi Court's award of lost pay at $61,000. ROA.66

14.  Mr. McDougall has tried everything short of a lawsuit to retrieve his employment documents. Saudi Aramco told Mr. McDougall's firm in Saudi Arabia that it would turn over the documents. ROA.64.

**B. Procedural Background**

15.  Mr. McDougall sought a pre-suit Rule 202 deposition to retrieve his documents in *In re Neil McDougall*, Cause No. 2024-30510 (270th Dist. Ct., Harris County, Tex. May 13, 2024). That Rule 202 Petition was denied on July 2, 2024.

16.  Mr. McDougall next pursued justice by filing a state suit in Texas. On September 3, 2024, Mr. McDougall filed suit in the 116th Judicial District Court of Dallas County, Texas, under Cause No. DC-24-14597, against Defendant Saudi Arabian Oil Group d/b/a Saudi Aramco. ROA.28–43. He asserted claims including common law fraud and seeking both compensatory and exemplary damages totaling approximately $1,000,000. ROA.32–42.

17.  The Appellant served the Appellee at Aramco Services Company's Dallas office in September 2024.

18.  On October 11, 2024, Appellee Saudi Arabian Oil Company (correctly named and appearing as Saudi Aramco) filed a Notice of Removal in the United States District Court to the Northern District of Texas, Dallas Division, pursuant to 28

U.S.C. §§ 1441(d) and 1446. ROA.6–11. The Notice invoked federal jurisdiction under the Foreign Sovereign Immunities Act (FSIA), asserting that Saudi Aramco is an instrumentality of the Kingdom of Saudi Arabia and, as such, entitled to be removed as a foreign state. ROA.6–11. On the same date, Saudi Aramco filed a Notice of Filing of the Notice of Removal in the state court.

19.    On October 18, 2024, Saudi Aramco filed a Motion to Dismiss under Rules 12(b)(1), (2), and (5), asserting lack of subject-matter jurisdiction under the Foreign Sovereign Immunities Act (FSIA), lack of personal jurisdiction, insufficient service of process, and invoking the doctrine of forum non conveniens. ROA.213–240.

20.    On October 21, 2024, the Court issued an order requiring a joint status and scheduling report under Rule 16. ROA.281–282. The parties filed the required joint report on November 5, 2024, with the Appellant contending that Aramco's actions amounted to fraud, justifying exceptions to FSIA immunity and Aramco maintaining that it is immune and that the matter belongs in Saudi Arabia. ROA.283–288.

21.    On November 8, 2024, the Appellant filed his First Amended Complaint, bolstering his jurisdictional arguments and claims of fraud and asserting two exceptions to FSIA immunity: the commercial activity exception (28 U.S.C. § 1605(a)(2)) and the expropriation exception (28 U.S.C. § 1605(a)(3)). The Appellant simultaneously filed a response to the original motion to dismiss. ROA.289–308.

22.    On November 12, 2024, the district court issued an electronic order finding the original motion to dismiss moot because of the First Amended Complaint. On November 19, 2024, the parties jointly moved for, and on November 20, 2024, the Court granted a stipulated briefing schedule for the renewed motion to dismiss the amended complaint. ROA.320–322.

23.    On December 6, 2024, Saudi Aramco filed its renewed Motion to Dismiss the Amended Complaint, raising the same jurisdictional and procedural grounds as in the original motion. ROA.327–363.

24.    In response, on December 17, 2024, the Appellant filed a motion requesting leave to effect service on a foreign instrumentality under 28 U.S.C. § 1608(b)(3), citing the absence of an international treaty or Hague Convention procedures with Saudi Arabia. ROA.383–386. The district court granted this motion on December 30, 2024, ordering the Clerk to send translated service documents to Saudi Aramco in Dhahran, Saudi Arabia. ROA.421.

25.    The Appellant filed his response to the renewed motion to dismiss on December 27, 2024, arguing the applicability of the FSIA's "commercial activity" and "expropriation" exceptions, asserting personal jurisdiction based on Saudi Aramco's operations via its U.S. subsidiary and contending that forum non conveniens and improper service did not warrant dismissal. ROA.393–420.

26.    On February 3, 2025, Saudi Aramco filed its reply in support of the motion to dismiss, maintaining that the Appellant's claims arose entirely from alleged conduct in Saudi Arabia during the prior employment litigation, thus lacking a sufficient nexus to the United States under FSIA exceptions or jurisdictional standards. ROA.422–437.

27.    On April 21, 2025, the District Court issued a Memorandum Opinion and Order granting the motion to dismiss for lack of subject-matter jurisdiction. ROA.438–444. The Court found that neither the FSIA's commercial activity exception nor the expropriation exception applied, concluding that the Appellant's claims arose from alleged conduct in Saudi court proceedings and lacked sufficient U.S. connection. ROA.438–444.

28.    That same day, the Court entered a Final Judgment, dismissing Appellant's claims without prejudice. ROA.445

## IX.    STANDARD OF REVIEW

29.    The question of whether a court has subject matter jurisdiction over the instrumentality of a foreign state is a pure question of law which this Court decides de novo. *See Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003), cert. denied, 545 U.S. 1041 (2005).

## X. SUMMARY OF THE ARGUMENT

30.    The district court misapplied the Foreign Sovereign Immunities Act (FSIA) by requiring a showing of minimum contacts under *International Shoe* in addition to the statutory criteria. That requirement conflicts with the Supreme Court's clear and recent holding in *CC/Devas (Mauritius) Ltd. v. Antrix Corp. Ltd.*, 221 L. Ed. 2d 867 (U.S. 2025), which held that personal jurisdiction under 28 U.S.C. § 1330(b) exists when a statutory exception to immunity applies and service is proper. The district court's overlay of a constitutional due process test distorts the FSIA's text and structure and warrants reversal.

31.    Mr. McDougall's claims satisfy two independent FSIA exceptions. First, the commercial activity exception under § 1605(a)(2) applies because Saudi Aramco's conduct—recruiting and managing Mr. McDougall's employment through its Houston-based subsidiary—was commercial, U.S.-based, and materially connected to the fraud at issue. Second, the expropriation exception under § 1605(a)(3) applies because Aramco's refusal to provide essential employment documents deprived Mr. McDougall of a valuable legal claim under Texas law. That deprivation was both arbitrary and discriminatory under customary international law.

32.    By narrowly focusing on conduct in Saudi Arabia and requiring more than the FSIA demands, the district court denied jurisdiction in error. This Court should reverse and remand.

## XI.  ARGUMENT

33.    The District Court erroneously dismissed this action under the Foreign Sovereign Immunities Act ("FSIA"), misinterpreting its exceptions and disregarding the fundamental basis of Appellant's complaint. Therefore, Mr. McDougall makes this appeal.

### A. FSIA generally applies sovereign immunity to foreign states and entities.

34.    The District Court correctly laid out the general rule for how the FSIA operates. The FSIA provides the sole basis for any court in the U.S., state or federal, to have subject matter jurisdiction over a foreign state. *Janvey v. Libyan Investment Auth.*, 840 F.3d 248, 257 (5th Cir. 2016). Much like the doctrine of sovereign immunity under the Texas Torts Claims Act, foreign states are presumptively immune to the subject matter jurisdiction of any court in the U.S. unless a statutory exception applies. *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993).

35.    The burden of persuasion under the FSIA changes depending on the sufficiency of each party's pleadings. The party initially claiming that immunity applies under the FSIA has the initial burden of persuasion. *Janvey*, 840 F.3d at 257. If the party seeking protection sufficiently pleads that the FSIA immunity applies, the burden of persuasion shifts to the opposing party to demonstrate an exception to the FSIA general rule of immunity. *See id.* If the opposing party sufficiently pleads one or more exceptions, the burden of persuasion shifts back to the party seeking

immunity to show that the proposed exceptions do not apply to the party seeking immunity such that its entitlement to immunity remains. *Id.* at 257–58.

36.     There are a number of exceptions to the FSIA's general rule of immunity contained in 28 U.S.C. § 1605. Subsection (a) outlines the primary exceptions to sovereign immunity for foreign states in U.S. courts. A foreign state is not immune when: it has waived immunity either explicitly or by implication; the case involves commercial activity with a direct effect in the U.S.; it concerns rights in property taken in violation of international law and connected to a foreign state engaged in commercial activity; it involves personal injury or death occurring in the U.S. due to a tortious act; or it involves arbitration agreements. These exceptions collectively form the backbone of subject matter jurisdiction under the Foreign Sovereign Immunities Act (FSIA). Subsections (b) through (h) contain additional exceptions for extraordinarily unique situations.

## B. The District Court Erred in reading Minimum Contacts as a requirement in the FSIA.

37.     The District Court committed reversible error by applying a minimum contacts analysis to determine subject-matter jurisdiction under the Foreign Sovereign Immunities Act (FSIA). This approach directly contradicts the Supreme Court's unanimous decision in *CC/Devas (Mauritius) Ltd. v. Antrix Corp. Ltd.*, 221 L. Ed. 2d 867 (U.S. 2025), which clarified that the FSIA does not impose a minimum contacts requirement.

38.     Section 1330(b) of the FSIA states that "[p]ersonal jurisdiction over a foreign state shall exist" whenever (1) an enumerated exception under §§ 1605–1607 applies and (2) service of process is proper under § 1608. The Supreme Court in *CC/Devas* held that this text means what it says: "personal jurisdiction over a foreign sovereign is automatic whenever an exception to immunity applies and service of process has been accomplished." *CC/Devas,* 221 L. Ed. 2d at 873. The Court emphasized that "[n]otably absent from §1330(b) is any reference to 'minimum contacts'," and further stated that it would "decline to add in what Congress left out." *Id.*

39.     In direct contravention of that standard, the District Court here evaluated jurisdiction by searching for the "particular conduct that constitutes the gravamen of the suit" and where that conduct occurred. ROA.441 (citing *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 35 (2015)). The Court rejected Mr. McDougall's argument that the case was "based upon Saudi Aramco's recruitment of him in the United States through its Houston-based subsidiary" and concluded instead that "McDougall's claims do not arise out of his hiring," but "remain at [the] foundation" of events that occurred during "Saudi Arabian court proceedings." ROA.441. In other words, the District Court treated the Commercial Activity Exception as requiring the kind of suit-related forum contact analysis typical of *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945). That was error.

40.    The Supreme Court in *CC/Devas* explicitly rejected this interpretive move. "[T]he FSIA's immunity exceptions themselves require varying degrees of suit-related domestic contact before a case may proceed," the Supreme Court explained, "it is only because the exceptions Congress wrote happen to meet that standard, not because the Act's personal-jurisdiction provision secretly incorporated our jurisdictional due-process cases." *CC/Devas*, 221 L. Ed. 2d at 878. The Court expressly condemned the Ninth Circuit's "minimum contacts" overlay and reversed its holding for that reason.

41.    That same flaw underlies the District Court's order here. Rather than analyzing whether Mr. McDougall's claims fell within a statutory exception to immunity, the District Court assessed whether the "core" of the case arose from events in the United States, conflating sovereign immunity with constitutional personal jurisdiction. ROA.442 (rejecting jurisdiction because "neither ASC's recruitment efforts nor Saudi Aramco's oil sales and refinement constitute Saudi Aramco's particular conduct constituting the gravamen of McDougall's suit").

42.    The FSIA contains no such requirement. Once a plaintiff pleads facts supporting an immunity exception and effects service, the court's jurisdiction exists as a matter of law. *CC/Devas*, 221 L. Ed. 2d at 877 ("Subject matter jurisdiction plus service of process equals personal jurisdiction."). By importing an extratextual due

process test into the FSIA, the District Court distorted the statute's comprehensive framework and improperly dismissed a valid claim.

43.     Because Mr. McDougall adequately pled both the Commercial Activity and Expropriation Exceptions under § 1605 described in detail below, and proper service of the Defendant is not an issue, the District Court had jurisdiction under § 1330(b). Its dismissal based on the location of conduct and sovereign characterization cannot stand under *CC/Devas.* Reversal is warranted.

## C. The District Court failed to apply the Commercial Activity Exception.

44.     The District Court erred; the Commercial Activities Exception applies to Mr. McDougall's suit against Saudi Aramco. First, 28 U.S.C. § 1605(a)(2) provides a "commercial activities" exception to the general rule when a suit is based on:

> "…a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;"

28 U.S.C. § 1605(a)(2).

In *Stena Rederi AB v. Comision de Contratos del Comite Ejecutivo General del Sindicato Revolucionario de Trabajadores Petroleros de la Republica Mexicana, S.C.*, this Court held that the connection between the commercial actions and the suit does not require a direct causal connection; rather, it requires a material connection. 923 F.2d 380, 387 (5th Cir. 1991).

45.    The District Court began its analysis by characterizing the gravamen of Mr.

McDougall's claim as the refusal to produce employment documents during foreign

litigation, concluding that the alleged misconduct occurred abroad, relying on *OBB*

*Personenverkehr AG v. Sachs*, 577 U.S. 27 (2015). The District Court's

characterization misapprehends the relevant facts and misapplies governing

precedent. The claim arises not from litigation tactics abroad but from a commercial

relationship initiated and executed through Aramco's U.S.-based operations.

### 1.  Saudi Aramco's actions were commercial in nature.

46.    First, the District Court's framing glosses over the critical role of Aramco's

U.S.-based subsidiary, Aramco Americas (ASC), in recruiting and onboarding him.

The commercial relationship began in the United States, where ASC engaged in the

kind of employment recruitment, benefits enrollment, and communication tasks that

any private employer might undertake. Under *Republic of Argentina v. Weltover*,

504 U.S. 607, 614 (1992), such conduct qualifies as "commercial activity" because

it is of the type that private parties customarily perform in commerce, regardless of

whether the actor is a sovereign.

47.    The Supreme Court in *Republic of Argentina v. Weltover*, 504 U.S. 607, 614

(1992), explained that "commercial activity" under the FSIA includes actions a

private party could undertake for profit, such as hiring employees, selling products,

or transacting business. Importantly, the commercial activity exception applies

where the foreign state's conduct has a "direct effect in the United States," defined as one that "follows as an immediate consequence of the defendant's activity" without a requirement of substantiality or foreseeability.

**2. Saudi Aramco's fraud arises from U.S.-based activities.**

48.    Here, the wrongful deprivation of employment benefits occurred only because of a U.S.-based commercial relationship: Saudi Aramco recruited Mr. McDougall from the United States through ASC, which, as discussed above handled recruitment, onboarding, and employment paperwork. Mr. McDougall's offer letter confirms that ASC was the conduit for employment documentation, a relationship that underpins the fraud claim now before the Court. Moreover, the District Court did not fully address the substance of Mr. McDougall's allegations. The true core of Mr. McDougall's claims concerns the fact that Saudi Aramco's commercial actions constituted fraud to deprive him of his property: his full claim for relief.

49.    The District Court dismissed this nexus as background noise, citing *OBB* to assert that the "core" of the action occurred abroad. But unlike *OBB*, 577 U.S. at 35, where a U.S. ticket purchase had no bearing on an Austrian train platform injury, Saudi Aramco's means of depriving Mr. McDougall of his property are rooted in an employment relationship forged and managed through continuous U.S.-based commercial conduct.

50.     Crucially, the District Court's analysis narrowed its focus to events occurring in Saudi Arabia, overlooking the broader commercial conduct that began in the United States and led directly to the alleged harm. The Commercial Activities Exception requires the District Court to look at the full temporal scope of the plaintiff's suit and then decide if the gravamen of the suit is commercial actions lying in the U.S. *OBB*, 577 U.S. at 35 (2015). The District Court focused solely on the initial denial of Mr. McDougall's employment documents, which occurred in Saudi Arabia, and failed to consider any additional events. The District Court is right to look at these facts, but it is wrong to look only at the occurrences in Saudi Arabia. Denial of access to Mr. McDougall's employment documents occurred in both Saudi Arabia and the United States when Mr. McDougall attempted to obtain the documents through ASC. Combined with the systematic employment actions Saudi Aramco engages in through ASC in the U.S. and the systematic economic activity, this suit falls within the purview of the Commercial Activities Exception.

51.     The District Court also reasoned that the harm Mr. McDougall suffered, denial of his property right to relief, was not the result of any commercial activity in the U.S. but instead a sovereign litigation decision in a foreign country. *OBB*, 577 U.S. at 35, refutes this analysis because the Commercial Activities Exception requires identifying the "gravamen" of the suit but does not mandate that the commercial conduct be the last event in the causal chain. The key facts giving rise to liability are

not limited to Saudi Aramco's decisions during litigation but include its U.S.-based representations, document creation, and obligations, all of which were executed through ASC in the United States. The denial of documents to defraud Mr. McDougall of his claim simply exploited earlier omissions tied to commercial activity conducted in Texas. Accordingly, the commercial activity exception applies, and the Court has subject matter jurisdiction under 28 U.S.C. § 1605(a)(2).

**D. The District Court erred in rejecting the Expropriation Exception.**

52.    The District Court erred; the Expropriation Exception does apply to the Appellant's suit. The District Court rejected the expropriation exception, finding no "property right" at issue and no violation of international law. Both conclusions are legally and factually erroneous.

53.    The Expropriation Exception explicitly allows subject matter jurisdiction where "rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(3). The Supreme Court interpreted this exception as having three elements: 1) a commercial connection, 2) a taking of property rights, and 3) in violation of international law. *Bolivarian Rep. of Venez. v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 181 (2017).

54.    The meaning of the first element is fairly clear. According to the Supreme Court, a commercial connection requires either that the foreign instrumentality do business directly in the United States or directly cause business to be done in the U.S. *Verlinden B.V. v. Cent. Bank of Nig.*, 461 U.S. 480, 488-89 (1983).

55.    Taking of property rights means that the foreign instrumentality has "effectively deprive[d] an alien of substantially all the benefits of his interest in property," *Beierwaltes v. L'Office Federale de la Culture de la Confederation Suisse (Fed. Office of Culture of the Swiss Confederation)*, 999 F.3d 808, 821 (2d Cir. 2021) (citing *Banco Nacional de Cuba v. Chem. Bank N.Y. Tr. Co.*, 822, F.2d 230, 239 (2d Cir. 1987)).

56.    Whether a taking violates international law depends on whether it falls into one of three categories: 1) nationalizations or expropriations of property without payment of prompt, adequate, and effective compensation; 2) takings that are discriminatory; and 3) takings that are arbitrary. *Id.*; *see also* H.R. Rep. No. 94-1487, at 19-20 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 6604, 6618. An arbitrary taking is one that bears no rational relationship to a public purpose. *Beierwaltes*, 999 F.3d at 821.

**1. Legal claims are property which are subject to expropriation**

57.    Regrettably, the District Court failed to properly analyze the law and facts under this exception. The Court stated in its opinion,

> "The Court determines that McDougall has not sufficiently demonstrated that Saudi Aramco took the employment documents at issue in violation of international law. His allegations are conclusory and do not establish that the withholding of the employment documents was either discriminatory or arbitrary."

Memorandum Opinion and Order, ROA.443.

58.    The District Court's reasoning suffers from multiple deficiencies. Most notably, the court overlooked the core of Mr. McDougall's pleadings, which make clear that the documents were not the property at issue but rather the means through which Saudi Aramco deprived him of his legal claim, a recognized property interest under Texas law. Mr. McDougall's claims against Saudi Aramco are not that he was defrauded out of his employment documents, with the employment documents being the end property. If that were Mr. McDougall's argument, Saudi Aramco would be correct, and the District Court would have ruled correctly. Rather, Mr. McDougall claims that the withholding of key employment documents, his full employment contract, was the tool Saudi Aramco used to defraud Mr. McDougall of his property right: his full legal claim for relief from Saudi Aramco. The defrauding of his property rights to his claim is his real claim. The District Court completely failed to evaluate Mr. McDougall's claims as he pled them in his *First Amended Petition* and

his *Response and Brief to Defendant's Second Motion to Dismiss*. On this basis alone, the District Court erroneously granted the Appellee's motion to dismiss for lack of subject matter jurisdiction.

59.    *Henry v. Brooks*, 651 S.W.3d 657, 664 (Tex. App.—Tyler 2022, no pet.) confirms that a legal claim qualifies as a valuable property right. Saudi Aramco's deliberate withholding of employment records defrauded the Appellant of this right, which is a harm in a form recognized under Texas law as property. Because the Foreign Sovereign Immunities Act defers to the forum state's substantive law in defining property, as held in *Cassirer v. Thyssen-Bornemisza Collection Foundation*, 596 U.S. 107, 113–14 (2022), McDougall asserts that his lost legal claim qualifies as property within the meaning of § 1605(a)(3).

60.    As this Court is undoubtedly aware, a district court considering state law claims captures the substantive law of the state in which it sits to consider the state law claims brought before it. *Id.* Here, Mr. McDougall captured the substantive law of Texas by filing in Texas. Therefore, the federal district court was required to defer to Texas law on whether a legal claim is property. *Id.* The district court completely failed in this regard, which requires reversal.

## 2. Saudi Aramco unlawfully discriminated against alien workers in its expropriation.

61.    The District Court also found that McDougall failed to allege a "taking in violation of international law" because Saudi Aramco's actions were not shown to

be arbitrary or discriminatory. Saudi Aramco's actions reflect a pattern of discriminatory targeting against foreign employees. As he properly pled in his *First Amended Complaint*, the company systematically terminated foreign workers during the COVID-19 pandemic while ensuring that Saudi nationals retained access to necessary employment documents. This is not merely theoretical; Mr. McDougall won a wrongful termination suit against Saudi Aramco on exactly this ground, which the District Court completely ignored. This is in error as well because the District Court was required to recognize the judgment under the doctrine of collateral estoppel. *Bravo–Fernandez v. U.S.*, 580 U.S. 5, 10 (2016).

62.     Saudi Aramco's discriminatory policy, which resulted in the ultimate defrauding of Mr. McDougall's property rights, constitutes a taking without due process or legitimate public purpose. This violated customary international law.

63.     Finally, the District Court concluded that Mr. McDougall failed to allege how "withholding of the employment documents bears no rational relationship to a public purpose." The District Court's conclusion on the arbitrariness test is one sentence devoid of any analysis. By contrast, the Appellant provided meaningful, substantive analysis of how the deprivation was arbitrary. Appellant pled in his *First Amended Complaint* that Saudi Aramco's deprivation was not rationally related to any public purpose. He questioned how defrauding a former employee of full relief could be related to <u>any</u> rational purpose. Instead, he proposed in the same paragraph and later

in the Complaint that Saudi Aramco's purpose was to eliminate overhead by targeting alien employees who would have a difficult time prosecuting their legitimate claims in Saudi Arabia. Such an explanation does satisfy the test for an Arbitrary taking.

64.     However, Mr. McDougall was never required to specifically show any of the possibilities for how the taking violated international law at the jurisdictional stage. Rather, he was required to show that his claim under the Expropriation Exception was non-frivolous and substantial. *Crist v. Republic of Turk.*, 995 F. Supp. 5, 11 (D.D.C. 1998) (citing *Siderman de Blake v. Republic of Argentin*a, 965 F.2d 699, 711 (9th Cir. 1992)). As he pled in detail in his Complaint and Response, Mr. McDougall's claims for fraud are substantial and non-frivolous, which satisfy the Expropriation Exception at the jurisdictional stage. Therefore, the District Court erred in granting the motion to dismiss for lack of subject matter jurisdiction.

## XII.    CONCLUSION STATING RELIEF SOUGHT

CONSIDERING the foregoing facts, law, and arguments, Appellant Neil McDougall requests that this Court REVERSE the Order Granting the Motion to Dismiss and Final Judgment entered on April 21, 2025, and REMAND this action to the District Court for full adjudication in keeping with this Court's order.

Respectfully submitted,

*/s/Warren V. Norred*
Warren V. Norred; Texas Bar Number: 24045094; warren@norredlaw.com
NORRED LAW, PLLC
515 E. Border Street
Arlington, TX 76010
O: (817) 704-3984; F: (817) 524-6686
COUNSEL FOR APPELLANT

## CERTIFICATE OF SERVICE REQUIRED BY
## FED. R. APP. P 25(d)

I certify that on August 4, 2025, the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure on all registered counsel of record, and has been transmitted to the Clerk of the Court.

*/s/ Warren V. Norred*
Warren V. Norred

## CERTIFICATE OF COMPLIANCE WITH
## FED. R. APP. P. 32(G)(1) AND 5TH CIR. R. 32.3
## (SEE FED. R. APP. P. 28(A)(10))

1. This document complies with the type-volume limit of Fed. R. App. Pro. 32(a)(7)(B), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,206 words and does not exceed 30 pages.

2. This brief also complies with the typeface requirements of Fed. R. App. Pro. 32(a)(5) and (6) because it has been prepared in a proportional-spaced typeface using Microsoft Word with a 14-point Times New Roman font.

*/s/ Warren V. Norred*
Warren V. Norred