No. 25-10619

# United States Court of Appeals for the Fifth Circuit

◆

NEIL MCDOUGALL,

*Plaintiff-Appellant,*

-v.-

SAUDI ARABIAN OIL COMPANY, D/B/A SAUDI ARAMCO,

*Defendant-Appellee.*

◆

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS

◆

## BRIEF FOR APPELLEE SAUDI ARABIAN OIL COMPANY

Carolyn B. Lamm
Hansel T. Pham
Nicolle E. Kownacki
Alec M. Albright
**WHITE & CASE**
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600
clamm@whitecase.com
hpham@whitecase.com
nkownacki@whitecase.com
alec.albright@whitecase.com

September 3, 2025                    *Counsel for Appellee Saudi Arabian Oil Company*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**<u>Defendant-Appellee:</u>**

Respondent-Appellee Saudi Arabian Oil Company is directly owned 81.48% by the Kingdom of Saudi Arabia, a foreign sovereign.  No publicly held corporation owns 10% or more of its stock.

**<u>Attorneys for Defendant-Appellee:</u>**

Carolyn B. Lamm
Hansel T. Pham
Nicolle E. Kownacki
Alec M. Albright
White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005
(202) 626-3600

Christopher L. Dodson (counsel in proceedings below)
White & Case LLP
609 Main Street
Suite 2900
Houston, TX 77002
(713) 496-9700

**Plaintiff-Appellant:**

Neil McDougall

**Attorneys for Plaintiff-Appellant:**

Warren Norred

Norred Law, P.L.L.C.
515 E. Border Street
Arlington, TX 76010
(817) 704-3984

Respectfully submitted,

/s/ Carolyn B. Lamm
Carolyn B. Lamm

## STATEMENT REGARDING ORAL ARGUMENT

Appellant has requested oral argument.  *See* Br. ii.  Appellee Saudi Arabian

Oil Company does not object if oral argument will assist the Court.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ............................................................. i

STATEMENT REGARDING ORAL ARGUMENT ............................................ iii

TABLE OF CONTENTS ................................................................................ iv

TABLE OF AUTHORITIES ........................................................................... vi

JURISDICTIONAL STATEMENT ................................................................. 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ........................... 2

STATEMENT OF THE CASE .......................................................................... 3

    I.      INTRODUCTION ............................................................... 3

    II.     RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY ............................................................................ 5

          A.    Saudi Aramco Is an "Agency or Instrumentality" of the Kingdom of Saudi Arabia ......................................... 5

          B.    Appellant's Alleged Employment in Saudi Arabia ................... 6

          C.    The Employment Litigation in Saudi Arabia ............................ 7

          D.    The U.S. Litigation ................................................................ 9

STANDARD OF REVIEW ............................................................................. 11

SUMMARY OF ARGUMENT ........................................................................ 12

ARGUMENT ................................................................................................. 14

    I.      THE DISTRICT COURT CORRECTLY HELD THAT IT LACKED SUBJECT-MATTER JURISDICTION UNDER THE FSIA ............................................................................... 14

          A.    Appellant's Claims Fail to Satisfy the FSIA's Commercial-Activity Exception, 28 U.S.C. § 1605(a)(2) ............................. 16

1. The Gravamen of Appellant's Fraud Claims Occurred In Saudi Arabia, Not the United States ..........................17

2. ASC's Alleged U.S. Commercial Activity is Not Attributable to Saudi Aramco.........................................22

B. Appellant's Claims Fail to Satisfy the FSIA's Expropriation Exception, 28 U.S.C. § 1605(a)(3) ...........................................24

C. The District Did Not Overlay a Personal-Jurisdiction "Minimum Contacts" Requirement on Its FSIA Subject-Matter Jurisdiction Analysis .....................................................30

CONCLUSION ..........................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adams v. Hinchman*,
154 F.3d 420 (D.C. Cir. 1998)..........................................................29

*Agudas Chasidei Chabad of United States v. Russian Federation*,
110 F.4th 242 (D.C. Cir. 2024)........................................................24

*Al-Qarqani v. Saudi Arabian Oil Co.*,
19 F.4th 794 (5th Cir. 2021) ..............................................4, 11, 14

*Arriba Ltd. v. Petroleos Mexicanos*,
962 F.2d 528 (5th Cir. 1992) ..........................................................23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................28

*Beierwaltes v. L'Office Federale De La Culture De La Confederation Suisse*, 999 F.3d 808 (2d Cir. 2021) ..............................................25

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
581 U.S. 170 (2017).............................................5, 12, 15, 25, 29

*Can-Am Int'l, LLC v. Republic of Trinidad & Tobago*,
169 F. App'x 396 (5th Cir. 2006) ....................................................15

*CC/Devas (Mauritius) Ltd. v. Antrix Corp. Ltd.*,
145 S. Ct. 1572 (2025)......................................................... 13, 30-33

*de Csepel v. Republic of Hungary*,
859 F.3d 1094 (D.C. Cir. 2017).................................................. 24-25

*Devas Multimedia Private Ltd. v. Antrix Corp.*,
Nos. 20-36024, 22-35085, 22-35103, 2023 WL 4884882
(9th Cir. Aug. 1, 2023)....................................................................31

*EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro, S.A.*,
894 F.3d 339 (D.C. Cir. 2018).........................................................28

*Fed. Ins. Co. v. Richard I. Rubin & Co.*,
   12 F.3d 1270 (3d Cir. 1993) .......................................................... 23-24

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
   462 U.S. 611 (1983) .......................................................................24

*Force v. Republic of Sudan*,
   No. 20-3027, 2024 WL 4827281 (D.D.C. Nov. 19, 2024)........................... 29-30

*Good v. Aramco Servs. Co.*,
   971 F. Supp. 254 (S.D. Tex. 1997) ....................................................20

*Henry v. Brooks*,
   651 S.W.3d 657 (Tex. App. 2022)......................................................30

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945).......................................................................31

*Janvey v. Libyan Inv. Auth.*,
   840 F.3d 248 (5th Cir. 2016) ............................................................16

*OBB Personenverkehr AG v. Sachs*,
   577 U.S. 27 (2015)...................................... 12, 17, 18, 19, 21, 22, 32

*Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*,
   899 F.3d 1081 (9th Cir. 2018) .........................................................23

*Peterson v. Royal Kingdom of Saudi Arabia*,
   416 F.3d 83 (D.C. Cir. 2005)............................................................20

*Phaneuf v. Republic of Indonesia*,
   106 F.3d 302 (9th Cir. 1997) ...........................................................23

*Phoenix Consulting Inc. v. Republic of Angola*,
   216 F.3d 36 (D.C. Cir. 2000) ...........................................................15

*Republic of Argentina v. Weltover*,
   504 U.S. 607 (1992).......................................................................23

*Republic of Hungary v. Simon*,
   604 U.S. 115 (2025).......................................................................14

vii

*Saudi Arabia v. Nelson*,
    507 U.S. 349 (1993)...........................................................12, 15, 17, 18

*Spectrum Stores, Inc. v. Citgo Petroleum Corp.*,
    632 F.3d 938 (5th Cir. 2011) ....................................................15

*Stena Rederi AB v. Comision de Contratos del Comite Ejecutivo Gen. del
    Sindicato Revolucionario de Trabajadores Petroleros de la Republica
    Mexicana, S.C.*, 923 F.2d 380 (5th Cir. 1991)............................. 20-21

*Türkiye Halk Bankasi A.S. v. United States*,
    598 U.S. 264 (2023)....................................................................14

*United States v. Moats*,
    961 F.2d 1198 (5th Cir. 1992) ...............................................11, 14

*Virtual Countries, Inc. v. Republic of South Africa*,
    300 F.3d 230 (2d Cir. 2002) .....................................................28

*Zedan v. Kingdom of Saudi Arabia*,
    849 F.2d 1511 (D.C. Cir. 1988) ............................................. 19-20

## STATUTES AND RULES

28 U.S.C. § 1291 .......................................................................1

28 U.S.C. § 1330(b) ...............................................................1, 31

28 U.S.C. § 1441(d) ..................................................................9

28 U.S.C. § 1603 ..................................................................1, 14

28 U.S.C. § 1603(b) ..............................................................5-6, 23

28 U.S.C. § 1604 .....................................................................14

28 U.S.C. § 1605 .....................................................................14

28 U.S.C. § 1605(a)(2)...................1, 2, 9-10, 12, 16-17, 18, 24, 32

28 U.S.C. § 1605(a)(3)...................... 1, 2, 9-10, 13, 24, 29

## OTHER AUTHORITIES

*Garanti Koza LLP v. Turkmenistan*,
    ICSID Case No. ARB/11/20, Award (Dec. 19, 2016) ...................................26

*Grammercy Funds LLC v. Republic of Peru*,
    ICSID Case No. UNCT/18/2, Final Award (Dec. 6, 2022)...........................26

*İçkale İnşaat Limited Ltd. Şirketi v. Turkmenistan*,
    ICSID Case No. ARB/10/24, Award (Mar. 8, 2016) .............................. 26-27

Jan Paulsson, *Denial of Justice in International Law* (2006)...................................26

H.R. Rep. No. 94-1487 (1976)...........................................................................11, 27

# JURISDICTIONAL STATEMENT

This Court has appellate jurisdiction over this appeal under 28 U.S.C. § 1291. The District Court issued a Final Judgment in this case (ROA.445) on April 21, 2025. Appellant filed a timely Notice of Appeal of the Final Judgment on May 12, 2025 (ROA.446).

Appellee Saudi Arabian Oil Company ("Saudi Aramco," or the "Company") is immune from these proceedings under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1603, *et seq.*, based on the District Court's determination that Appellant's claims do not satisfy the FSIA's commercial-activity or expropriation exceptions, 28 U.S.C. §§ 1605(a)(2), (a)(3), respectively. *See* ROA.440-443. For the avoidance of doubt, Saudi Aramco also contests the existence of personal jurisdiction. *See* 28 U.S.C. § 1330(b) ("Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under [28 U.S.C. §§ 1605-1607] where service has been made under section 1608 of this title.").

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.    Whether the District Court correctly held that Appellant's claims did not satisfy the FSIA's commercial-activity exception, 28 U.S.C. § 1605(a)(2).

2.    Whether the District Court correctly held that Appellant's claims did not satisfy the FSIA's expropriation exception, 28 U.S.C. § 1605(a)(3).

3.    Whether the District Court's assessment of the lack of subject-matter jurisdiction applied a "minimum contacts" test separate and apart from the FSIA's statutory requirements.

## STATEMENT OF THE CASE

## I.    INTRODUCTION

The action below concerns Appellant's employment in Saudi Arabia, where, as alleged in Appellant's Amended Complaint, Appellant was an employee of Saudi Aramco pursuant to a series of annual employment contracts entered between 2012 and 2020 and governed by the laws of Saudi Arabia.  *See* Appellant Br. ("Br.") 2; ROA.52-55.  In 2020, Appellant allegedly left Saudi Arabia on a family trip, but was unable to reenter the country due to COVID-19 lockdown measures and was allegedly terminated from his position soon thereafter.  *See* Br. 2-3; ROA.297. Appellant brought a wrongful termination lawsuit against Saudi Aramco in a Saudi Arabian court, which ultimately awarded Appellant an amount of compensation for the time remaining on his employment contract.  *See* Br. 3; ROA.297.  Appellant received payment of these funds in September 2021.  ROA.63.

In 2024, Appellant initiated the instant lawsuit in Texas State Court, which Saudi Aramco subsequently removed to the U.S. District Court for the Northern District of Texas.  Appellant raises common law fraud claims against Saudi Aramco on the purported theory that, during the employment litigation *in Saudi Arabia*, Saudi Aramco allegedly refused to provide Appellant with documents concerning certain employee-benefits programs.  *See* Br. 3-4; ROA.297-298.  Appellant asserts that possession of the alleged documents would have allowed him to pursue

additional employment-related claims against Saudi Aramco in various Saudi administrative forums, but that Saudi Aramco fraudulently withheld these materials from Appellant (despite its alleged promises to turn over the documents). *See* Br. 4-5; ROA.298-299.

Saudi Aramco moved to dismiss Appellant's claims on various grounds, including the Company's presumptive immunity from suit as an agency or instrumentality of a foreign state within the meaning of the FSIA. *See* ROA.213. In the decision below, the District Court agreed with Saudi Aramco, and held that Appellant failed to show that either the FSIA's commercial-activity or expropriation exceptions—the only exceptions Appellant invokes here—applied to Appellant's claims. *See* ROA.438-444. The District Court therefore entered a Final Judgment, ROA.445, dismissing Appellant's case for lack of subject-matter jurisdiction under the FSIA.

This appeal presents a straightforward case for affirmance. It is undisputed that Saudi Aramco is an agency or instrumentality of a foreign state entitled to presumptive immunity. *See* ROA.292; *see also Al-Qarqani v. Saudi Arabian Oil Co.*, 19 F.4th 794, 800 (5th Cir. 2021) ("We hold that Saudi Aramco is a 'foreign state' for purposes of the FSIA.") (citing 28 U.S.C. §§ 1603-1604). On appeal, Appellant rehashes the same allegations and legal arguments from the District Court proceeding as to the alleged applicability of the FSIA's commercial-activity and

expropriation exceptions. Even taking Appellant's allegations as true for purposes of a motion to dismiss, Appellant falls far short of carrying his burden to "show (and not just arguably show)" an applicable exception to Saudi Aramco's presumptive immunity from suit. *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 187 (2017). As discussed below in the Argument, Appellant's criticisms of the District Court's reasoning are misguided and premised upon a fundamental misapplication of settled precedents in the FSIA context. Accordingly, this Court should affirm the District Court's Memorandum Opinion and Order and Final Judgment dismissing this case for lack of subject-matter jurisdiction under the FSIA.

## II. RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Saudi Aramco Is an "Agency or Instrumentality" of the Kingdom of Saudi Arabia

Saudi Aramco is an integrated energy and chemicals company established in 1988 by the Kingdom of Saudi Arabia (the "Kingdom") under Royal Decree M/8. ROA.263. Saudi Aramco is a Saudi Arabian company, doing business in Saudi Arabia and established under Saudi law. The Kingdom directly owns more than 81% of Saudi Aramco's shares, with the remainder held by holdings of the Kingdom's sovereign wealth fund or else publicly traded. *Id.* Given the Kingdom's direct, majority ownership of the Company, Saudi Aramco is an "agency or

instrumentality" of the Kingdom within the meaning of the FSIA, 28 U.S.C. § 1603(b).

For clarity's sake, Saudi Aramco contests Appellant's inaccurate descriptions of Saudi Aramco's relationships with the Kingdom and Saudi Aramco's affiliates. Appellant asserts that the Kingdom "either directly or indirectly owns all Aramco businesses." Br. 1; ROA.296. More precisely, as noted, the Kingdom directly owns a majority of Saudi Aramco's shares. Moreover, as an instrumentality, Saudi Aramco is a legally-separate entity from the Kingdom itself. *See* 28 U.S.C. § 1603(b)(1) (defining an "agency or instrumentality" as "a separate legal person, corporate or otherwise"). Appellant likewise mischaracterizes Aramco Services Company ("ASC") as Saudi Aramco's "U.S. arm." Br. 2; ROA.296. Contrary to Appellant's assertion, ASC is a separate legal entity, established under the laws of the State of Delaware and based in Houston, Texas. ASC is one of several legally-separate international subsidiaries owned indirectly by Saudi Aramco. ASC carries out its business, in the United States and globally, separate from the business activities of Saudi Aramco.

## B. Appellant's Alleged Employment in Saudi Arabia

Appellant alleges (Br. 2; ROA.296) that he was hired to work for Saudi Aramco in Saudi Arabia through ASC. Based on an employment offer letter Appellant apparently signed in June 2012, Appellant (a Canadian national) allegedly

received—and accepted—his offer for employment with Saudi Aramco while residing in Ontario, Canada, for payment in Canadian Dollars. *See* ROA.49-50. The employment letter specifies that ASC's role in Appellant's hiring was ensuring Appellant's compliance with certain administrative contingencies prior to Appellant's start of employment. ROA.49.

Appellant alleges that he worked for Saudi Aramco in Saudi Arabia from November 2012 to June 2020 under a series of one-year contracts. Br. 2; ROA.296. Those employment contracts were governed by the laws of Saudi Arabia. ROA.55 (providing that "all matters arising under or relating to [Appellant's] employment contract, its performance, and its completion or termination shall be governed by the laws of the Kingdom of Saudi Arabia").

Appellant alleges that, in early 2020, he left Saudi Arabia for a family visit. Br. 2; ROA.297. Appellant's return flight was scheduled for March 2020, but Appellant was unable to reenter Saudi Arabia after it closed its borders amidst the COVID-19 pandemic. Br. 2; ROA.297. Appellant alleges that "[w]hile [he] was stuck outside the country, Saudi Aramco took the opportunity to terminate him in June 2020." Br. 3; ROA.297.

## C. The Employment Litigation in Saudi Arabia

After Appellant's alleged termination from Saudi Aramco, in February 2021, Appellant allegedly "won a wrongful termination claim" in the amount of 229,138

Saudi Riyals (US$ 61,179.84) against Saudi Aramco in the Seventh Chamber of the Labor Court in Dammam, Saudi Arabia. Br. 3; *see also* ROA.60. This amount reflected compensation for the four months remaining in Appellant's employment contract at the time of his alleged termination. ROA.60. The First Labor Chamber of the Court of Appeals in the Eastern Province subsequently affirmed this judgment in April 2021. Br. 3; ROA.60. Appellant allegedly received payment of the Saudi court judgment in September 2021. ROA.63.

Appellant alleges that during the Saudi litigation, his counsel "tried to obtain his employment documents," and that such documents "would have allowed [Appellant] to recover his employment benefits, including his medical, retirement, and life insurance benefits." Br. 3; ROA.297. Appellant further alleges that Saudi Aramco's representatives allegedly "represented to [Appellant's] counsel . . . in Saudi Court on or around February 8, 2021, that they would turn over [Appellant's] employment documents to him." Br. 4; ROA.298. Appellant states that "[d]espite his requests, Aramco's legal obligation under Saudi law to turn over his employment documents, and Saudi Aramco counsel's promise, Aramco never turned over [Appellant's] documents." Br. 4; ROA.298. Appellant contends that receipt of these documents would have allowed him to pursue additional claims in Saudi courts and administrative forums. Br. 4; ROA.298. Appellant acknowledges that he has not

filed any claim in Saudi Arabia to obtain either his alleged employment documents or any allegedly associated benefits.  Br. 5; ROA.298.

### D.    The U.S. Litigation

In September 2024, Appellant initiated[1] a lawsuit against Saudi Aramco in Texas State Court alleging common law fraud claims under Texas law.  *See* ROA.28-43.  In October 2024, Saudi Aramco timely removed the Texas State Court action to the U.S. District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1441(d), which authorizes removal of lawsuits filed against foreign states within the meaning of the FSIA.  *See* ROA.6-12.  Saudi Aramco then moved to dismiss Appellant's claims for lack of subject-matter jurisdiction under the FSIA, lack of personal jurisdiction, insufficient service of process, and under the doctrine of *forum non conveniens*.  ROA.213.

On November 8, 2024, Appellant filed the operative First Amended Complaint ("Amended Complaint"), raising common law fraud claims arising from Saudi Aramco's alleged failure to turn over Appellant's employment documents.  *See* ROA.289-308.  Appellant alleged that subject-matter jurisdiction existed as to his claims against Saudi Aramco under the FSIA's commercial-activity and

---

[1] Appellant states (at Br. 5) that he "served" Saudi Aramco at ASC's Dallas office. Although the issue of service is not before this Court, Saudi Aramco reiterates that ASC is a legally-separate entity from Saudi Aramco, and is not Saudi Aramco's agent for service of process in the United States (or anything else).  Indeed, Saudi Aramco has not appointed any agent for service of process in the United States.

expropriation exceptions, 28 U.S.C. §§ 1605(a)(2), (a)(3). *See* ROA.292-295. On November 12, 2024, the district court issued an Electronic Order finding Saudi Aramco's original Motion to Dismiss as moot per the Amended Complaint. ROA.340. On December 6, 2024, Saudi Aramco moved to dismiss the Amended Complaint for lack of subject-matter jurisdiction under the FSIA, lack of personal jurisdiction, insufficient service of process, and under the doctrine of *forum non conveniens*. *See* ROA.327-363.

On April 21, 2025, the District Court issued its Memorandum Opinion and Order, ROA.438-444, and Final Judgment, ROA.445, dismissing Appellant's claims for lack of subject-matter jurisdiction under the FSIA. In particular, the District Court held that the FSIA's commercial-activity exception did not apply because "the conduct constituting the gravamen of [Appellant's] suit occurred in Saudi Arabia." ROA.441. The District Court explained that "[t]he core of [Appellant's] suit is based on Saudi Aramco's alleged refusal to provide him with the employment documents during the wrongful termination suit, which took place in Saudi Arabian court." *Id.* Furthermore, the District Court determined that, even accepting Appellant's allegations as true for the motion-to-dismiss stage, "neither ASC's recruitment efforts nor Saudi Aramco's oil sales and refinement constitute Saudi Aramco's particular conduct constituting the gravamen of [Appellant's] suit." ROA.442.

The District Court likewise held that the FSIA's expropriation exception did not provide subject-matter jurisdiction over Appellant's claims. The District Court concluded that Appellant's "conclusory" allegations failed to establish that Saudi Aramco's alleged withholding of Appellant's employment documents constituted a violation of international law. ROA.442-443. In doing so, the District Court reasoned that none of the three categories of illegal takings discussed in the FSIA's legislative history applied to Appellant's claim that Saudi Aramco allegedly withheld Appellant's alleged employment documents. ROA.443 (citing H.R. Rep. No. 94-1487, at 19-20 (1976)). Accordingly, Appellant did "not me[e]t his burden of presenting evidence that the expropriation exception to immunity applies." ROA.443. Having dismissed Appellant's claims on the threshold issue of subject-matter jurisdiction, the District Court did not reach Saudi Aramco's remaining grounds for dismissal.

## STANDARD OF REVIEW

This Court "review[s] the existence of jurisdiction under the [FSIA] *de novo*." *Al-Qarqani*, 19 F.4th at 798 (citing *United States v. Moats*, 961 F.2d 1198, 1205 (5th Cir. 1992)); *see also* Br. 8 (acknowledging the same).

## SUMMARY OF ARGUMENT

As an undisputed agency or instrumentality of a foreign state, Saudi Aramco is entitled to presumptive immunity to suit in U.S. court. The District Court correctly dismissed Appellant's claim for lack of subject-matter jurisdiction under the FSIA, because Appellant's allegations do not meet his burden to "show (and not just arguably show)" that an FSIA exception to Saudi Aramco's immunity applies in this case. *Helmerich*, 581 U.S. at 187.

*First*, Appellant fails to satisfy the FSIA's commercial-activity exception, 28 U.S.C. § 1605(a)(2), because the gravamen of Appellant's fraud-based lawsuit allegedly occurred in Saudi Arabia, and arises from Saudi Aramco's alleged withholding of certain employment documents during a legal proceeding in Saudi Arabian court. Even assuming Appellant's allegations as true, Appellant's claims therefore lack a sufficient connection with the United States, as is required by 28 U.S.C. § 1605(a)(2), and the Supreme Court's precedents in *Saudi Arabia v. Nelson* and *OBB Personenverkehr AG v. Sachs*. In addition, Appellant's theory erroneously hinges on the alleged U.S. commercial activity of Saudi Aramco's legally-separate U.S. subsidiary, ASC. Appellant does not allege any basis for piercing the corporate veil and imputing ASC's alleged conduct to Saudi Aramco for purposes of the commercial-activity exception.

*Second*, Appellant fails to satisfy the FSIA's expropriation exception, 28 U.S.C. § 1605(a)(3), because Appellant's allegations, even assumed to be true, do not amount to a taking in violation of international law. Appellant's allegations do not meet the high "denial of justice" standard applicable under international law for claims of an illegal taking of an unlitigated claim. And even if Appellant could allege a taking of his unlitigated benefits claims by alleging Saudi Aramco committed discriminatory or arbitrary conduct, Appellant's attempted repackaging of his allegations in this respect are conclusory and insufficient, as the District Court held.

*Third*, Appellant's argument that the District Court overlayed a personal-jurisdiction "minimum contacts" requirement on its FSIA subject-matter jurisdiction analysis, in contradiction of the Supreme Court's recent holding in *CC/Devas (Mauritius) Ltd. v. Antrix Corp. Ltd.*, 145 S. Ct. 1572 (2025) ("*Devas*"), is wholly unavailing. The Supreme Court's determination in *Devas* regarding *personal* jurisdiction did nothing to alter the standard for assessing an adequate U.S. nexus for purposes of *subject-matter* jurisdiction under the FSIA. The District Court correctly applied the FSIA's subject-matter-jurisdiction standard here.

# ARGUMENT

## I. THE DISTRICT COURT CORRECTLY HELD THAT IT LACKED SUBJECT-MATTER JURISDICTION UNDER THE FSIA

"[T]he FSIA codifies a baseline principle of immunity for foreign states and their instrumentalities." *Türkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 272 (2023). Under the FSIA, foreign states and their agencies or instrumentalities are presumptively immune from civil suits in U.S. courts. 28 U.S.C. § 1604; *see also Republic of Hungary v. Simon*, 604 U.S. 115, 118 (2025) (explaining that "the FSIA provides that foreign sovereigns and their agencies cannot be haled into this Nation's courts at all" subject to the FSIA's enumerated statutory exceptions). It is undisputed that Saudi Aramco is directly and majority-owned by the Kingdom, and therefore Saudi Aramco is an "agency or instrumentality" entitled to presumptive immunity from suit in the United States. *See* 28 U.S.C. §§ 1603-1607; *Al-Qarqani*, 19 F.4th at 800 (holding that Saudi Aramco is a "foreign state" within the meaning of the FSIA, 28 U.S.C. § 1603, entitled to presumptive immunity from suit).

To establish subject-matter jurisdiction over a claim against a foreign state, a plaintiff bears the burden of providing facts to establish that one of the FSIA's enumerated exceptions to immunity from suit applies. *See Al-Qarqani*, 19 F.4th at 800 (describing burden-shifting approach under the FSIA); *Moats*, 961 F.2d at 1205 (similar); *see also* 28 U.S.C. §§ 1605, 1605A, 1605B (setting forth exceptions to immunity from suit).

At the motion-to-dismiss stage, the plaintiff's "well-pled" jurisdictional allegations are assumed to be "true and view[ed] . . . in the light most favorable to the plaintiff." *Spectrum Stores, Inc. v. Citgo Petroleum Corp.*, 632 F.3d 938, 948 (5th Cir. 2011) (internal quotation marks and citations omitted) (affirming dismissal for lack of subject-matter jurisdiction); *see also Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000) (explaining that when assessing foreign sovereign immunity at the Rule 12(b)(1) phase, "[i]f the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations, then the district court should take the plaintiff's factual allegations as true and determine whether they bring the case within any of the exceptions to immunity invoked by the plaintiff" (citing *Saudi Arabia v. Nelson*, 507 U.S. 349, 351 (1993)). Nevertheless, the plaintiff has the burden to "show (and not just arguably show)" that his alleged facts satisfy one of the FSIA's enumerated exceptions to sovereign immunity. *Helmerich*, 581 U.S. at 187; *see also Can-Am Int'l, LLC v. Republic of Trinidad & Tobago*, 169 F. App'x 396, 402 (5th Cir. 2006) (discussing plaintiff's "burden . . . to provide facts showing that an exception applies" under the FSIA). "Simply making a nonfrivolous argument . . . is not sufficient." *Helmerich*, 581 U.S. at 187.

Here, because Appellant failed to establish that any FSIA exception to immunity from suit is satisfied by his allegations, even assuming all his allegations

as true, the District Court correctly dismissed Appellant's claim for lack of subject-matter jurisdiction.

### A. Appellant's Claims Fail to Satisfy the FSIA's Commercial-Activity Exception, 28 U.S.C. § 1605(a)(2)

The FSIA's commercial-activity exception provides that:

A foreign state shall not be immune . . . in any case . . . in which the action is based

> [1] upon a commercial activity carried on in the United States by the foreign state; or
>
> [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or
>
> [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2) (brackets added). To proceed under any prong of the commercial-activity exception, a plaintiff must show, among other things, that the foreign-sovereign defendant's alleged conduct has a sufficient "jurisdictional nexus" to the United States. *See Janvey v. Libyan Inv. Auth.*, 840 F.3d 248, 261 (5th Cir. 2016) (explaining that "[t]he commercial activity exception contains three clauses, each identifying a type of act that is sufficiently connected to the United States to satisfy the jurisdictional nexus requirement"). The applicability of the exception does not turn on a defendant's commercial activities as a general matter, but rather

the *specific activity* that the plaintiff's claim is "based upon." 28 U.S.C. § 1605(a)(2).

### 1. The Gravamen of Appellant's Fraud Claims Occurred In Saudi Arabia, Not the United States

Most fundamentally, Appellant's commercial-activity argument fails because Appellant does not (and cannot) show that the core of his fraud-based claims has a sufficient connection with the United States.

It is settled Supreme Court precedent that § 1605(a)(2)'s "based upon" language "is read most naturally to mean those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case." *Nelson*, 507 U.S. at 357. *Nelson* "teaches that an action is 'based upon' the 'particular conduct' that constitutes the 'gravamen' of the suit." *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 35 (2015) (citing *Nelson*, 507 U.S. at 358); *see also id.* (instructing that, rather than individually analyzing each of the plaintiff's causes of action, courts should "zero[] in on the core of the[] suit: the . . . sovereign acts that actually injured" the litigant).

Appellant contends that "[t]he true core of [his] claims concerns the fact that Saudi Aramco's commercial actions constituted fraud to deprive him of his property: his full claim for relief." Br. 16. But, rather than ask this Court to "zero in," on the alleged conduct relevant to his fraud claim, Appellant expressly—and incorrectly— asks this Court to examine "the broader commercial conduct that began in the United

States and *led directly to* the alleged harm." Br. 17 (emphasis added). In other words, Appellant asks the Court to rest its jurisdictional assessment not on the conduct that *caused* the alleged harm, but on precursor events (specifically, Appellant's recruitment and hiring) several years earlier that have little to do with Appellant's alleged injury (that is, with the alleged withholding of his employment-benefit documents during his post-termination proceedings in Saudi Arabia). *See, e.g.*, Br. 16 (arguing that the "wrongful deprivation of employment benefits occurred only because of a U.S.-based commercial relationship: Saudi Aramco recruited [Appellant] from the United States through ASC"). He suggests that to hold otherwise would mean "mandat[ing] that the commercial conduct [at issue] be the last event in the causal chain." *Id.* at 17.

Appellant's sweeping interpretation of § 1605(a)(2)'s "based upon" requirement cannot be reconciled with the Supreme Court's instruction in *Nelson* and *OBB* to "zero[] in on the core" of the suit. *See OBB*, 577 U.S. at 35; *Nelson*, 507 U.S. at 358. Under Appellant's "led to" theory, any precursor conduct—no matter how attenuated in time, subject matter, or causality from the alleged harm—could form the basis of the jurisdictional analysis. That is simply not the law.

Applying the Supreme Court's rule here, the District Court correctly concluded that "the conduct constituting the gravamen of [Appellant's] suit occurred in Saudi Arabia," and not the United States, and the "core of [Appellant's] suit is

18

based on Saudi Aramco's alleged refusal to provide" the alleged employment documents to Appellant during the litigation in Saudi Arabian court. ROA.441 (applying *OBB*, 577 U.S. at 29). Indeed, as the District Court cogently stated:

> McDougall's claims do not arise out of his hiring, but out of an alleged promise Saudi Aramco made during Saudi Arabian court proceedings regarding his termination. McDougall does not plead that Saudi Aramco—or ASC—acted fraudulently in recruiting him, but that Saudi Aramco acted fraudulently after his employment terminated. *However McDougall frames his suit, Saudi Aramco's actions during the wrongful termination proceedings remain at its foundation.*

ROA.441 (emphasis added).

The D.C. Circuit's decision in *Zedan v. Kingdom of Saudi Arabia*, 849 F.2d 1511 (D.C. Cir. 1988), is instructive. In that case, the court held that the commercial-activity exception did not apply to a dispute arising from the Kingdom of Saudi Arabia's alleged failure to fulfill a guarantee to pay the plaintiff for his employment in Saudi Arabia, notwithstanding the fact that the plaintiff received an employment offer over the phone while living in California. *Id.* at 1512. The court determined that the phone call was "merely [a] precursor[] to commercial transactions" because plaintiff's employment suit was "not actually based upon the recruitment phone call, . . . but rather on the guarantee entered into over two years later." *Id.* at 1513. The court concluded that the plaintiff's injury "was definitely suffered in Saudi Arabia, for it was there that the Ministry of Communications breached its contract with him," and "the breach's *effect* in the United States cannot be said to be direct, for this effect

is due to an intervening event—appellant's return here." *Id.* at 1515 (emphasis added).

Similar to *Zedan*, here, any "recruitment efforts" in the United States would, at most, be "merely [a] precursor[] to commercial transactions" because Plaintiff's suit is based only on the alleged fraud occurring years later. *See id.* at 1513; *see also Good v. Aramco Servs. Co.*, 971 F. Supp. 254, 259 (S.D. Tex. 1997) (rejecting plaintiff's "semantic ploy" to "recast a straightforward tort claim that arose in Saudi Arabia into a misrepresentation that arose in the United States," and holding that the commercial-activity exception did not apply). The fact that Appellant allegedly traveled to the United States following his employment with Saudi Aramco does not establish a jurisdictional nexus, because any "direct effect" felt in the United States by the alleged conduct of Saudi Aramco is only "due to an intervening event"—*i.e.*, Appellant moving there. *See Zedan*, 849 F.2d at 1515; *see also Peterson v. Royal Kingdom of Saudi Arabia*, 416 F.3d 83, 91 (D.C. Cir. 2005) (finding that the termination of a benefit for foreign workers did not have a "direct effect" in the United States).

Appellant cites *Stena Rederi AB v. Comision de Contratos del Comite Ejecutivo Gen. del Sindicato Revolucionario de Trabajadores Petroleros de la Republica Mexicana, S.C.*, 923 F.2d 380, 387 (5th Cir. 1991), for the proposition that, under § 1605(a)(2), "the connection between the [foreign sovereign

20

defendant's] commercial actions and the suit does not require a direct causal connection; rather, it requires a material connection." Br. 14. Appellant's reliance on *Stena Rederi* is misplaced. As an initial matter, *Stena Rederi* is superseded by the Supreme Court's decision in *OBB*, which looks to the "gravamen" of a plaintiff's suit, and does not apply a "material connection" test. *See* 577 U.S. at 35. In any event, Appellant misconstrues the holding in *Stena Rederi*. In that case, a panel of this Court determined that, for a connection to be "material," the commercial acts must "form the *basis*" of the plaintiff's complaints. *Stena Rederi*, 923 F.2d at 387 (emphasis added). The *Stena Rederi* court concluded that the commercial-activity exception did not apply because "the few commercial acts on which [plaintiff] relies . . . are unrelated to the facts on which [plaintiff] relies for its causes of action," and "[t]he fact that an agency of a foreign state has commercial operations in the United States in itself is inadequate to support a finding of subject matter jurisdiction under the FSIA." *Id.* at 387-88.

Appellant also references—without citing any specific facts—Saudi Aramco's alleged "systematic economic activity" in the United States that he asserts give "rise to liability" in this case. Br. 17-18 (describing supposed allegations of "U.S.-based representations, document creation, and obligations, all of which were executed through ASC in the United States"); *see also* ROA.404 (alleging that "Saudi Aramco's consistent, systematic actions that gave rise to this case constitute

21

a commercial action upon which [Appellant's] claims are based"). But these vague allegations fair no better. As the District Court stated, "the commercial activity exception does not turn on Saudi Aramco's commercial activities as a general matter, but rather the 'particular conduct that constitutes the gravamen of the suit.'" ROA.442 (quoting *OBB*, 577 U.S. at 35). Neither ASC's alleged recruitment of Appellant nor any other vaguely alleged "economic activity" in the United States constitute the "particular conduct" of Appellant's alleged fraud claims. *See OBB*, 577 U.S. at 35; *see also* ROA.442 (holding same).

### 2. ASC's Alleged U.S. Commercial Activity is Not Attributable to Saudi Aramco

Even if generalized "economic activity" or precursor events far attenuated from Appellant's claims were relevant to establishing the gravamen of the suit (and they are not), Appellant's commercial-activity argument also fails because it focuses erroneously on the alleged conduct of Saudi Aramco's legally-separate U.S. subsidiary, ASC. Appellant alleges that "Saudi Aramco's actions were commercial in nature" but then discusses not the conduct of Saudi Aramco but rather the alleged U.S. commercial activity of ASC, a legally-separate subsidiary of Saudi Aramco. Br. 15. Appellant asserts that § 1605(a)(2) applies because the alleged "commercial relationship began in the United States," where ASC allegedly "engaged in the kind of employment recruitment, benefits enrollment, and communication tasks that any

22

private employer might undertake."[2]  Br. 15.

Appellant's allegations as to ASC's alleged conduct are insufficient to satisfy
the commercial-activity exception as to Saudi Aramco.  "[A]ll three clauses" of
§ 1605(a)(2) "require a commercial activity *of the foreign state*."  *Packsys, S.A. de
C.V. v. Exportadora de Sal, S.A. de C.V.*, 899 F.3d 1081, 1088-89 (9th Cir. 2018)
(quoting *Phaneuf v. Republic of Indonesia*, 106 F.3d 302, 307 (9th Cir. 1997)).
Appellant's assertions pertain to ASC's (and not Saudi Aramco's) alleged conduct
in recruiting and onboarding him.  *See* Br. 15 (noting ASC's "critical role" in
recruiting Appellant).  However, Appellant cannot impute ASC's alleged U.S.
commercial activity to obtain jurisdiction as to Saudi Aramco (absent clearing the
exceedingly high bar for piercing multiple layers of corporate separateness between
Saudi Aramco and ASC, which Appellant has not attempted to do).  *See, e.g.*, *Arriba
Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 533-37 (5th Cir. 1992) (refusing to
attribute the actions of a private labor union to the Mexican state-owned oil company
for purposes of determining subject-matter jurisdiction under § 1605(a)(2)); *Fed.
Ins. Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270, 1286, 1289 (3d Cir. 1993)

---

[2] In this respect, Appellant's citation (Br. 15-16) to *Republic of Argentina v.
Weltover*, 504 U.S. 607, 614 (1992), is misguided.  ASC—a Delaware-incorporated
entity, based in Houston, Texas, and indirectly owned by Saudi Aramco—is not an
"agency or instrumentality" of a foreign state within the meaning of the FSIA, 28
U.S.C. § 1603(b).  The test articulated in *Weltover* for identifying when a foreign
sovereign, such as Saudi Aramco, engages in activity of a commercial or sovereign
nature is thus not relevant to ASC.

(concluding that the district court's determination that a Dutch sovereign entity was engaged in commercial activity connected to the United States based on its U.S. subsidiaries' activities "violate[d] the important principle" of corporate separateness); *see generally First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 626-27 (1983) (extending principal of corporate separateness to agencies or instrumentalities of a foreign state).

\* \* \* \* \*

In sum, Appellant does not (and cannot) allege an adequate nexus between Saudi Aramco's actions—*i.e.*, the alleged withholding of Appellant's alleged employment documents for purposes of litigation in Saudi Arabia—and the United States. Accordingly, the District Court properly held that § 1605(a)(2) does not provide a basis for subject-matter jurisdiction over Appellant's claims.

## B. Appellant's Claims Fail to Satisfy the FSIA's Expropriation Exception, 28 U.S.C. § 1605(a)(3)

To establish subject-matter jurisdiction under the expropriation exception, 28 U.S.C. § 1605(a)(3), a plaintiff must show that "[1] rights in property are at issue, that [2] property has been taken in violation of international law, and [3] the appropriate 'commercial-activity nexus requirement' is satisfied." *Agudas Chasidei Chabad of United States v. Russian Federation*, 110 F.4th 242, 250 (D.C. Cir. 2024) (brackets added) (quoting *de Csepel v. Republic of Hungary*, 859 F.3d 1094, 1104

(D.C. Cir. 2017)); *see also Helmerich*, 581 U.S. at 174 ("[S]tate and federal courts can maintain jurisdiction to hear the merits of a case only if they find that the property in which the party claims to hold rights was indeed 'property taken in violation of international law'. . . . [T]he relevant factual allegations must make out a legally valid claim that a certain kind of right is at issue (*property* rights) and that the relevant property was taken in a certain way (in violation of international law).").

Here, Appellant alleges an illegal taking because Saudi Aramco allegedly "deprived him of his legal claim" for various employment benefits by withholding his employment documents. Br. 20. According to Appellant, "the withholding of key employment documents, his full employment contract, was the tool Saudi Aramco used to defraud [Appellant] of his property right: his full legal claim for relief from Saudi Aramco." *Id.* The District Court correctly concluded that these allegations, even if true, do not amount to a "taking in violation of international law." As discussed below, the same result should follow on appeal.

Under the FSIA's expropriation exception, "the legal standards by which takings are judged are not found in the domestic laws of the United States or even the laws of the 'expropriating' nation, but rather in customary international law." *Beierwaltes v. L'Office Federale De La Culture De La Confederation Suisse*, 999 F.3d 808, 821 (2d Cir. 2021) (collecting cases). Under international law, a taking involving legal process, such as the foreclosing of an unlitigated claim, must rise to

25

the level of a "denial of justice." *See, e.g.*, *Garanti Koza LLP v. Turkmenistan*, ICSID Case No. ARB/11/20, Award, ¶ 365 (Dec. 19, 2016) (requiring an "element of serious and fundamental impropriety about the legal process"). "A denial of justice implies the failure of a national system as a whole to satisfy minimum standards." *Gramercy Funds LLC v. Republic of Peru*, ICSID Case No. UNCT/18/2, Final Award ¶ 1019 (Dec. 6, 2022) (internal quotation marks and citation omitted); *see also* Jan Paulsson, *Denial of Justice in International Law* 60 (2006) (ROA.375) ("The modern consensus is clear to the effect that the factual circumstances must be egregious if state responsibility is to arise on the grounds of denial of justice."). For example, in *İçkale İnşaat Ltd. Şirketi v. Turkmenistan,* ICSID Case No. ARB/10/24, Award, ¶¶ 357, 369 (Mar. 8, 2016), the tribunal rejected the claimant's contention that court decisions "amount[ed] to denials of justice, [and] the attachment decisions constitute unjust actions that are tantamount to unlawful expropriation," holding these decisions "cannot, on their own, be considered wrongful or expropriatory."

Here, Saudi Aramco's alleged failure to provide Appellant with documents in support of an employment-benefits claim did not deprive Appellant of any right to bring or litigate such claim, and certainly did not amount to a fundamental "failure of a national [legal] system as a whole." *See Gramercy*, ICSID Case No. UNCT/18/2, Final Award ¶ 1019. Similar to the claim in *İçkale*, Appellant's alleged deprivation of an ability to succeed on a claim "cannot, on [its] own, be considered

26

wrongful or expropriatory." *See* ICSID Case No. ARB/10/24, Award ¶ 369. Appellant's convoluted allegations simply do not show anything resembling a denial of justice. Indeed, Appellant provides no international legal authority in support of his strained interpretation that Saudi Aramco's alleged fraud in withholding employment documents—which allegedly reduced Appellant's likelihood of success on a claim he never even filed—constituted a "taking in violation of international law." This should end the inquiry.

Referencing the FSIA's legislative history, the District Court further explained that Congress drafted § 1605(a)(3) with three categories of illegal takings under international law in mind: "(1) nationalizations or expropriations of property without payment of prompt, adequate, and effective compensation; (2) takings that are discriminatory; and (3) takings that are arbitrary." ROA.443 (citing H.R. Rep. No. 94-1487, at 19-20 (1976)). The District Court correctly determined that Appellant's "conclusory" allegations fail to remotely satisfy any of these circumstances. *Id.* (1) Appellant's "pleadings do not support that Saudi Aramco withheld the employment documents because he is an alien, so his discriminatory taking claim fails." *Id.* (2) Appellant "does not establish that Saudi Aramco's withholding of the employment documents bears no rational relationship to a public purpose, so his arbitrary taking claim also fails." *Id.*

Appellant attempts to repackage and rehabilitate his allegations through

threadbare statements that "Saudi Aramco's actions reflect a pattern of discriminatory targeting against foreign employees," including the alleged "systematic[] terminat[ion] [of] foreign workers during the COVID-19 pandemic." Br. 22. Appellant further asserts that this alleged "discriminatory policy . . . resulted in the ultimate defrauding of [Appellant's] property rights," which "constitutes a taking without due process or legitimate public purpose" in violation of international law. Br. 22. The Amended Complaint contains no further details to this effect. *See generally* ROA.295, 301, 304. Appellant's "bald assertions" and "[c]onclusory allegations" are plainly insufficient to establish jurisdiction under the FSIA. *Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230, 241 (2d Cir. 2002) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (courts "are not bound to accept as true a legal conclusion couched as a factual allegation," and "mere conclusory statements . . . do not suffice"); *EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro, S.A.*, 894 F.3d 339, 345 (D.C. Cir. 2018) ("If an FSIA defendant contests only the legal sufficiency of the plaintiff's jurisdictional claims, our standard of review is akin to that applied under Rule 12(b)(6), under which dismissal is warranted if no plausible inferences can be drawn from the facts alleged that, if proven, would provide grounds for relief.").

In addition, Appellant asserts that he "was never required to specifically show any of the possibilities for how the [alleged] taking violated international law at the

jurisdictional stage. Rather, he was required to show that his claim under the Expropriation Exception was non-frivolous and substantial." Br. 23. Appellant is wrong. In *Helmerich*, the Supreme Court expressly rejected the "nonfrivolous" basis test for purposes of determining whether an FSIA exception to immunity from suit applies. *See* 581 U.S. at 187 (concluding that "the nonfrivolous-argument standard is not consistent with the [FSIA]"). Accordingly, *Helmerich* instructs that, to bring a claim within 28 U.S.C. § 1605(a)(3), Appellant must "show (and not just arguably show) a taking of property in violation of international law. Simply making a nonfrivolous argument to that effect is not sufficient." *Id.* Appellant has not satisfied his burden here to prove, or even allege, a taking in violation of international law, and thus there is no subject-matter jurisdiction under 28 U.S.C. § 1605(a)(3).

Finally, in asserting a taking of his unlitigated employment-benefits claim, Appellant also fails to satisfy § 1605(a)(3)'s "right[] in property" element. Under U.S. law, "a cause of action . . . affords no definite or enforceable property right until reduced to a final judgment." *Adams v. Hinchman*, 154 F.3d 420, 424 (D.C. Cir. 1998) (internal quotation marks omitted) (evaluating Fifth Amendment takings claims); *see also Force v. Republic of Sudan*, No. 20-3027, 2024 WL 4827281, at *4 (D.D.C. Nov. 19, 2024) (holding in context of Fifth Amendment takings claims that "[p]laintiffs lack a property interest in their claims prior to the entry of final

judgment" (internal quotation marks and citation omitted)).  The Texas State Court case Appellant cites (Br. 21) is inapposite because it did not concern an alleged taking for an unlitigated claim.  In *Henry v. Brooks*, the court considered whether the right of reimbursement entitled to co-owners of property survives to the estate of a life tenant.  651 S.W.3d 657, 664-66 (Tex. App. 2022).  In so doing, the court explained that the right of reimbursement is a "vested economic right" and "reimbursement is an equitable claim." *Id.* at 664.  Accordingly, Appellant's attempt to satisfy the expropriation exception to sovereign immunity fails for this reason as well.

### C. The District Did Not Overlay a Personal-Jurisdiction "Minimum Contacts" Requirement on Its FSIA Subject-Matter Jurisdiction Analysis

Grasping at straws, Appellant also contends that the "District Court committed reversible error by applying a minimum contacts analysis to determine subject-matter jurisdiction under the [FSIA]." Br. 11.  It did no such thing.  As explained below, Appellant's argument is confused and rests upon a misunderstanding of the Supreme Court's recent decision in *CC/Devas (Mauritius) Ltd. v. Antrix Corp.*, 145 S. Ct. 1572 (2025).

In *Devas*, the petitioner sought confirmation of an international arbitration award rendered against an instrumentality of the Republic of India.  *Id.* at 1577.  The district court initially confirmed the arbitration award, but the Ninth Circuit reversed.

30

*Id.* at 1579. The Ninth Circuit concluded that although an FSIA statutory exception to immunity from suit applied, the Indian instrumentality lacked sufficient "minimum contacts" with the United States under the traditional due process standard articulated in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and therefore dismissed the case for lack of personal jurisdiction. *See Devas Multimedia Private Ltd. v. Antrix Corp.*, Nos. 20-36024, 22-35085, 22-35103, 2023 WL 4884882, at *2-3 (9th Cir. Aug. 1, 2023), *rev'd sub nom. CC/Devas (Mauritius) Ltd. v. Antrix Corp.*, 145 S. Ct. 1572 (2025).

The Supreme Court reversed the Ninth Circuit's decision and remanded the case. *Devas*, 145 S. Ct. at 1582. In a unanimous opinion penned by Justice Alito, the Supreme Court reasoned that the Ninth Circuit erred in imposing a "minimum contacts" analysis in addition to the FSIA's statutory requirements for exercising personal jurisdiction over a foreign-sovereign defendant. *See id.* at 1576 (reasoning that "the Ninth Circuit's additional requirement" of minimum contacts "goes beyond the text of the FSIA"). The Supreme Court explained that the FSIA's personal jurisdiction provision, 28 U.S.C. § 1330(b), imposes two conditions for exercising personal jurisdiction over a foreign sovereign defendant: (1) an FSIA exception to immunity from suit must apply and (2) service must have been effected pursuant to the prescribed methods of the FSIA. *Id.* As the Supreme Court made express, *Devas* concerned *only* the FSIA's requirements for personal jurisdiction. *Id.* at 1576, 1582

(explaining that the case concerned only "the FSIA's neighboring personal-jurisdiction provision" and that the Court would not entertain Antrix's additional arguments for affirmance).

Contrary to Appellant's assertions (Br. 11-14), the *Devas* Court's rejection of a distinct "minimum contacts" inquiry for purposes of *personal* jurisdiction in the FSIA context is irrelevant to the District Court's decision here. The District Court dismissed Appellant's action for lack of FSIA *subject-matter* jurisdiction and did not reach the issue of personal jurisdiction (much less apply a "minimum contacts" analysis under *International Shoe*). *See* ROA.440-443.

Appellant contends that the District Court erred in its commercial-activity-exception inquiry because the District Court considered whether the "gravamen" or "core" of Appellant's suit has a sufficient nexus to the United States for purposes of satisfying the FSIA's commercial-activity exception, 28 U.S.C. § 1605(a)(2). Br. at 12-13. Appellant's argument is deeply confused. As discussed above in Argument § I.A.1, the District Court's "gravamen" inquiry correctly followed the Supreme Court's precedent in *OBB*, which considered the required U.S. nexus for *subject-matter* jurisdiction to exist under 28 U.S.C. § 1605(a)(2). *See* 577 U.S. at 35 ("an action" must be "based upon the particular conduct that constitutes the gravamen of the suit" (internal quotation marks and citation omitted)).

Contrary to Appellant's suggestion, nowhere does the *Devas* decision

remotely suggest that the Supreme Court questioned the well-settled gravamen-based approach to the commercial-activity exception's U.S.-nexus requirement, as articulated in *OBB*. Indeed, as Appellant concedes (Br. 13), the *Devas* Court expressly distinguished between the "minimum contacts" test for purposes of personal jurisdiction under *International Shoe* and the "FSIA's immunity exceptions" to presumptive immunity from suit which "themselves require varying degrees of suit-related [U.S.] contact before a case may proceed." *Devas*, 145 S. Ct. at 1580 (citing 28 U.S.C. §§ 1605-1607 and emphasizing that some immunity "exceptions call for [a] considerable domestic nexus").

In sum, the District Court correctly applied the FSIA in dismissing Appellant's suit for lack of subject-matter jurisdiction, and nothing in *Devas* impacts this result.

## CONCLUSION

For the foregoing reasons, the District Court correctly held that it lacked subject-matter jurisdiction over Appellant's claims. The District Court's Final Judgment dismissing Appellant's Amended Complaint should be affirmed.

Washington, D.C.
September 3, 2025

Respectfully submitted,

**WHITE & CASE**

/s/ *Carolyn B. Lamm*
Carolyn B. Lamm
Hansel T. Pham
Nicolle E. Kownacki
Alec M. Albright
701 Thirteenth Street, N.W.
Washington, DC 20005
(202) 626-3600
clamm@whitecase.com
hpham@whitecase.com
nkownacki@whitecase.com
alec.albright@whitecase.com

*Counsel for Appellee Saudi Arabian
Oil Company*

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of September, 2025, I caused the foregoing

Brief for Appellee to be filed with the Clerk of the Court of Appeals for the Fifth

Circuit using the CM/ECF system and to be served on all counsel of record:

Warren Norred
Norred Law, P.L.L.C.
515 E. Border Street
Arlington, TX 76010
(817) 704-3984
warren@norredlaw.com


/s/ Carolyn B. Lamm
Carolyn B. Lamm

## CERTIFICATE OF COMPLIANCE

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 7,202 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

/s/ Carolyn B. Lamm
Carolyn B. Lamm